**EXHIBIT "C"**

## INTELLECTUAL PROPERTY SECURITY AGREEMENT

THIS INTELLECTUAL PROPERTY SECURITY AGREEMENT (this "Agreement") is entered into, as of August 13, 2013, by MILLER AUTO PARTS & SUPPLY COMPANY, INC., a Delaware corporation ("Parent"), JOHNSON INDUSTRIES, INC., a Georgia corporation ("Industries"), MILLER AUTO PARTS & PAINT COMPANY, INC., a Delaware corporation ("APPC"), and AUTOPARTSTOMORROW.COM, LLC, a Delaware limited liability company ("APT"; Parent, Industries, APPC and APT are each individually, a "Grantor", and collectively, the "Grantors"), to FCC, LLC, d/b/a First Capital ("Lender").

### RECITALS

I.       Lender has agreed to make to Grantors a revolving line of credit loan in the amount of up to $18,000,000.00, as is more specifically evidenced by that certain Loan and Security Agreement executed by and between Grantors and Lender of even date hereof (as the same may be amended, modified, extended, renewed, replaced and supplemented from time to time, the "Loan Agreement"). Capitalized terms not defined herein shall have the meaning ascribed thereto in the Loan Agreement.

II.      Pursuant to the terms of the Loan Agreement, Grantors are required to secure their respective obligations with the grant of the security interest herein contained.

NOW, THEREFORE, for ten dollars ($10.00) and other good and valuable consideration paid by Lender, the receipt and sufficiency of which are hereby acknowledged, Grantors hereby represent, warrant, covenant and agree with Lender as follows:

### AGREEMENT

1.       Grant of Security Interest. To secure the prompt, full and complete payment and performance of the respective obligations of Grantors under the Loan Agreement (the "Obligations"), both now existing and hereafter arising, and each Grantor's other existing and future representations, warranties and covenants under the Loan Documents, each Grantor grants and pledges to Lender a security interest in all of such Grantor's right, title and interest in, to and under its present, existing and hereafter acquired Intellectual Property Collateral (including, without limitation, those copyrights, patents and trademarks listed on Exhibits "A", "B" and "C" attached hereto), together with all proceeds and products thereof (such as, by way of example, but not by way of limitation, license royalties and proceeds of infringement suits), the right to sue for past, present and future infringements, all rights corresponding thereto throughout the world and all re-issues, divisions, continuations, renewals, extensions and continuations-in-part thereof. As used herein, "Intellectual Property Collateral" means all of each Grantor's right, title and interest in and to its intellectual property, including without limitation, the following: (i) copyrights, trademarks and patents; (ii) any and all trade secrets, and any and all intellectual property rights in software and software products now or hereafter existing, created, acquired or held; (iii) any and all design rights which may be available to such Grantor now or hereafter existing, created, acquired or held; (iv) any and all mask works or similar rights now or hereafter existing, created, acquired or held; (v) any and all claims for damages by way of past, present and future infringement of any of the rights included above, with the right, but not the obligation,

to sue for and collect such damages for said use or infringement of the intellectual property rights identified above; (vi) all licenses or other rights to use any of the copyrights, patents or trademarks, and all license fees and royalties arising from such use to the extent permitted by such license or rights; (vii) all amendments, renewals, re-issues, divisions, continuations and extensions of any of the copyrights, trademarks or patents; and (viii) all proceeds and products of the foregoing, including without limitation all payments under insurance or any indemnity or warranty payable in respect of any of the foregoing.

Notwithstanding the foregoing, so long as this Agreement is in effect and so long as Grantors have not received notice from Lender that a Default (as defined in the Loan Agreement) has occurred and is continuing under the Loan Documents and that Lender has elected to exercise its rights hereunder, Grantors shall continue to have the exclusive right to use the Intellectual Property Collateral including licenses thereof, and Lender shall have no right to use the Intellectual Property Collateral or issue any exclusive or non-exclusive license with respect thereto, or assign, pledge or otherwise transfer title in the Intellectual Property Collateral to anyone else; *provided, however*, Lender shall be permitted to assign, pledge or otherwise transfer its Lien in the Intellectual Property Collateral without notice to or consent from Grantors in connection with Lender's assignment, pledge or other transfer of its interests in the Loan Documents as is more specifically permitted under the Loan Agreement.

2. Rights and Remedies; Exercise. This security interest is granted in conjunction with, and as a supplement to, the security interest granted to Lender under the Loan Agreement. The rights and remedies of Lender with respect to the security interest granted hereby are in addition to those rights and remedies of Lender set forth in the Loan Agreement, the other Loan Documents and those which are now available and may hereafter become available to Lender as a matter of law and equity, including, without limitation, those set forth in the Uniform Commercial Code of the State of Georgia (the "Code") as being available to a "secured party" and "creditor". Lender may exercise the aforementioned rights and remedies as and when provided herein, in the Loan Agreement and in the other Loan Documents. Each right, power and remedy of Lender provided for herein, in the Loan Agreement, in any of the other Loan Documents, together with those rights and remedies now and hereafter existing at law and in equity, shall be cumulative and concurrent and the exercise by Lender of any one or more of the aforementioned rights and remedies shall not preclude the simultaneous and later exercise by any person, including Lender, of any or all other rights, powers and remedies.

3. Term. The Loan Agreement and the terms and provisions thereof are incorporated herein in their entirety by this reference. The term of this Agreement and the security interests granted herein shall be coterminous with the term of the security interests granted in the Loan Agreement, and notwithstanding any limitation of, moratorium on and termination of Lender's obligation to make credit extensions under the Loan Agreement, Grantors' obligations under this Agreement shall remain in full force and effect for so long as any Obligations are outstanding. It shall be a Default under the Loan Documents if there is a breach or violation of any of the terms and provisions of this Agreement.

4. Registered Intellectual Property. Each Grantor represents and warrants that Exhibits "A", "B", and "C" attached hereto set forth any and all intellectual property rights which Grantors have registered or filed an application to register with either the United States

5607281v4                                                     2

Patent and Trademark Office or the United States Copyright Office, as applicable.

5. <u>New IP</u>. The rights, duties and obligations outlined in the provisions of this Agreement shall automatically apply to all intellectual property and intellectual property rights, including those set forth in any licenses related to any of the foregoing, which any Grantor obtains subsequent to the date of this Agreement ("<u>New IP</u>"). Grantors shall give to Lender written notice of all New IP that is registered (or for which an application for registration has been made) promptly after the acquisition of same, but in any event not less frequently than once per year. Each Grantor hereby authorizes Lender to (i) modify this Agreement unilaterally by amending the exhibits to this Agreement to include any New IP and (ii) file a duplicate original of this Agreement containing the amended exhibits reflecting the New IP in the manner described in Section 8 of this Agreement.

6. <u>Lender's Use of Intellectual Property; No Liability</u>. Each Grantor agrees that Lender's use of the Intellectual Property Collateral as authorized hereunder and in any other Loan Documents in connection with Lender's exercise of its rights and remedies shall be coextensive with such Grantor's rights thereunder and Lender will have no liability for royalties and other related charges upon exercise of such rights and remedies.

7. <u>Power of Attorney; Appointment</u>. Each Grantor irrevocably designates, constitutes and appoints Lender (and all persons designated by Lender in its sole and absolute discretion) as such Grantor's true and lawful attorney-in-fact, and authorizes Lender and any of Lender's designees, in such Grantor's or Lender's name, to, upon the occurrence and during the continuance of a Default, take any action and execute any instrument which Lender may deem necessary or advisable to accomplish the purpose of this Agreement.

8. <u>Filing; Patent Office and Copyright Office</u>. Each Grantor hereby consents to the filing of a duplicate original of this Agreement with the United States Patent and Trademark Office and United States Copyright Office, and the filing of a duplicate of this Agreement and financing statements in any other jurisdictions and locations deemed advisable or necessary in Lender's sole discretion to protect and perfect and put the public on notice of Lender's security interest and rights in the Intellectual Property Collateral. Each Grantor further consents to and ratifies the filing of such duplicate originals and financing statements prior to the date of this Agreement. Each Grantor shall from time to time execute and deliver to Lender, at the request of Lender, such other documents, instruments and records that Lender may reasonably request in form and substance reasonably satisfactory to Lender and its counsel, to perfect and continue Lender's security interest in the Intellectual Property Collateral.

9. <u>Termination of this Agreement</u>. Upon payment and performance of all Obligations under the Loan Documents and termination of the commitments of Lender under the Loan Agreement, Lender shall execute and deliver to the Grantors, at Grantors' cost and expense, all documents necessary to re-vest all rights in and to the Intellectual Property Collateral in the Grantors and/or terminate any interest of Lender therein.

10. <u>Governing Law, etc.</u> This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia, excluding therefrom any principle of such laws that might result in the application of the laws of another jurisdiction. In addition, (i) no

5607281v4

3

amendment of and waiver of a right under this Agreement will be binding unless it is in writing and signed by the party to be charged, (ii) to the extent a provision of this Agreement is unenforceable, this Agreement will be construed as if the unenforceable provision were omitted, (iii) a successor to and assignee of Lender's rights and obligations under the Loan Agreement will succeed to Lender's rights under this Agreement and (iv) all notices and other communications required or permitted herein shall be in writing and shall be deemed given when mailed by registered or certified mail, postage prepaid, return receipt requested, addressed to the addresses set forth above.

11.     <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which taken together shall constitute the same instrument.

(Signatures on following page)

5607281v4                                                    4

IN WITNESS WHEREOF, Grantors have caused this Agreement to be executed with authority duly obtained, as of the date first written above.

**GRANTORS**:

MILLER AUTO PARTS & SUPPLY COMPANY, INC.,
a Delaware corporation

By: _____
Name: Randolph J. Kulamer
Title: CEO

[CORPORATE SEAL]

JOHNSON INDUSTRIES, INC.,
a Georgia corporation

By: _____
Name: Randolph J. Kulamer
Title: CEO

[CORPORATE SEAL]

MILLER AUTO PARTS & PAINT COMPANY, INC.,
a Delaware corporation

By: _____
Name: Randolph J. Kulamer
Title: CEO

[CORPORATE SEAL]

AUTOPARTSTOMORROW.COM, LLC,
a Delaware limited liability company

By:  Miller Auto Parts & Supply Company, Inc., a
     Delaware corporation, its Sole Member

By: _____(SEAL)
Name: Randolph J. Kulamer
Title: CEO

## **EXHIBIT A**

Copyrights

| Description | Registration Number | Registration Date |
|---|---|---|

None.

5607281v4

**EXHIBIT A**

## **EXHIBIT B**

Patents

| Description | Registration/<br>Application Number | Registration/<br>Application Date |
|---|---|---|
| None. | | |

5607281v4

## **EXHIBIT C**

Trademarks

| Mark | Expiration Date | Registration No. | Registration Date |
|---|---|---|---|
| J.E.T.S. | 7/22/22 | 2587593 | 7/2/02 |

560728 1v4

# TRADEMARK ASSIGNMENT

Electronic Version v1.1
Stylesheet Version v1.1

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | Security Agreement |

CONVEYING PARTY DATA

| Name | Formerly | Execution Date | Entity Type |
|---|---|---|---|
| Miller Auto Parts & Supply Company, Inc. | | 08/13/2013 | CORPORATION: DELAWARE |
| Johnson Industries, Inc. | | 08/13/2013 | CORPORATION: GEORGIA |
| Miller Auto Parts & Paint Company, Inc. | | 08/13/2013 | CORPORATION: DELAWARE |
| AUTOPARTSTOMORROW.COM, LLC | | 08/13/2013 | LIMITED LIABILITY COMPANY: DELAWARE |

RECEIVING PARTY DATA

| Name: | FCC, LLC, d/b/a First Capital |
|---|---|
| Street Address: | 3350 Riverwood Parkway, Suite 1750 |
| City: | Atlanta |
| State/Country: | GEORGIA |
| Postal Code: | 30339 |
| Entity Type: | CORPORATION: FLORIDA |

PROPERTY NUMBERS Total: 1

| Property Type | Number | Word Mark |
|---|---|---|
| Registration Number: | 2587593 | J.E.T.S. |

CORRESPONDENCE DATA

Fax Number:
Phone:  4048705651
Email:  sue.wisch@agg.com
Correspondence will be sent to the e-mail address first; if that is unsuccessful, it

| | |
|---|---|
| *will be sent via US Mail.* | |
| Correspondent Name: | Sue Wisch |
| Address Line 1: | 171 17th St NW, Suite 2100 |
| Address Line 2: | Arnall Golden Gregory LLP |
| Address Line 4: | Atlanta, GEORGIA  30363 |
| **NAME OF SUBMITTER:** | Sue Wisch |
| Signature: | /Sue Wisch/ |
| Date: | 08/13/2013 |

**Total Attachments: 8**
source=1403_001#page2.tif
source=1403_001#page3.tif
source=1403_001#page4.tif
source=1403_001#page5.tif
source=1403_001#page6.tif
source=1403_001#page7.tif
source=1403_001#page8.tif
source=1403_001#page9.tif

**RECEIPT INFORMATION**

| | |
|---|---|
| ETAS ID: | TM277841 |
| Receipt Date: | 08/13/2013 |
| Fee Amount: | $40 |