**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| MILLER AUTO PARTS & SUPPLY | ) | Jointly Administered Under |
| COMPANY, INC., et al., | ) | CASE NO. 14-68113-mgd |
| | ) | |
| Debtors. | ) | |

**DEBTORS' FIRST MOTION (A) FOR AUTHORITY TO SELL ASSETS
FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES
(B) TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS,
LEASES AND LICENSES AND ESTABLISH CURE COSTS IN CONNECTION
THEREWITH; (C) TO ESTABLISH PROCEDURES WITH RESPECT TO
SUCH SALE AND THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND LEASES, (D) TO CONSIDER APPROVAL OF
BREAKUP FEE, AND (E) TO SHORTEN AND LIMIT NOTICE**

**PARTIES TO CONTRACTS, LEASES OR LICENSES WITH DEBTORS SHOULD EXAMINE
(A) EXHIBITS A-1 AND A-2 TO THE AGREEMENT ATTACHED HERETO AS EXHIBIT "1"
AND (B) EXHIBIT "2" TO THIS MOTION, TO LOCATE THEIR NAMES AND CONTRACTS,
LEASES OR LICENSES**

Miller Auto Parts & Supply Company, Inc., ("Miller Auto"), Johnson Industries, Inc. ("Johnson Industries"), Miller Auto Parts & Paint Company, Inc. ("Miller Paint"), and AutoPartsTomorrow.com, LLC ("APT"), Debtors and Debtors-in-possession (collectively, the "Debtors"), submit this Motion pursuant to Sections 105(a), 363(b), (f) and (m), and 365 of the Bankruptcy Code, and Bankruptcy Rules 6004, 6006, 9006 and 9007 and seek the following relief:

(a)     Entry of an order shortening notice and scheduling an expedited hearing (the "Procedures Hearing") to consider (i) approval of certain bidder protections for one or more proposed "stalking horse" purchasers (each, an "Initial Bidder") with whom one or more of the

- 1 -

Debtors reach agreement, subject to Court approval, to sell any or all of their assets, which bidder protections include payment of a proposed "Break-Up Fee," as more fully set forth below, and (ii) scheduling an auction sale (the "Auction Sale") for the sale of any or all of the Debtors' assets, and establishing terms and conditions, including overbid procedures, for other interested bidders to submit higher and better offers, or, with respect to any assets as to which the Debtors do not reach agreement with an Initial Bidder, establishing terms and conditions for parties to submit bids to purchase any or all of the such assets;

(b) Following the conclusion of the Procedures Hearing, entry of an order (the "Procedures Order"): (i) approving the proposed bidder protections and bid procedures and scheduling the proposed Auction Sale, (ii) scheduling a further hearing (the "Sale Hearing") to consider approval of one or more proposed definitive asset purchase agreements (each, an "Agreement") between one or more of the Debtors and any Initial Bidder, or between one or more of the Debtors and any other bidder who shall have submitted the highest and best offer for the purchase of some or all of the Debtors' assets (any such successful bidder being referred to herein as a "Purchaser"), as determined following the conclusion of the Auction Sale; and

(c) following the conclusion of the Sale Hearing, entry of an order (i) approving an Agreement with any proposed Purchaser, (ii) authorizing and approving the sale to any such Purchaser the assets which the Debtors propose to sell in the underlying Agreement ("Identified Assets") free and clear of all liens, claims, interests and encumbrances, (iii) authorizing the Debtors to assume and assign to each proposed Purchaser some or all of the Debtors' executory contracts and agreements and unexpired licenses and leases (collectively, the "Executory

Contracts") as set forth in the underlying Agreement (collectively, "Assigned Contracts"), to be identified prior to the Sale Hearing, (iv) fixing cure costs under 11 U.S.C. § 365 (b)(1) in connection therewith, and (v) waiving the automatic 14-day stay following entry of such order under Bankruptcy Rules 6004(h) and 6006(d) in order to permit the Debtors to consummate immediately the sale of any Identified Assets and the assumption and assignment of Assigned Contracts to one or more Purchasers.

In support of this Motion, the Debtors respectfully aver as follows:

## Introduction

1. On September 15, 2014, (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to operate their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2. No trustee or examiner has been appointed in this bankruptcy case. No request has been made for the appointment of a trustee or examiner. An official committee of unsecured creditors (the "Committee") was appointed on September 24, 2014.

## Jurisdiction And Venue

3. This Court has jurisdiction of this Motion pursuant to 28 U.S.C. Sections 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. Sections 157(b)(2)(A), (N) and (O). Venue of the Debtors' Chapter 11 case and this Motion in this District is proper pursuant to 28 U.S.C. Sections 1408 and 1409. The statutory predicates for the relief sought herein are Sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9006 and 9007.

**Background And Circumstances
Leading Up To Chapter 11 Filing**

4.      The Debtors are national suppliers and distributors of automotive parts offering a unique product mix of both original equipment ("OE") and aftermarket products. Johnson Industries, Miller Paint and APT each are a wholly owned subsidiary of Miller Auto. The Debtors operate from the Johnson Industries headquarters in Atlanta, Georgia and have distribution operations in the southeast, northeast and on-line. The Debtors' Southeastern distribution center is located in Norcross, Georgia and supports nine satellite centers across the region. From these locations, the Debtors distribute automotive parts and supplies to a network of dealers, repair shops and fleet customers. The Debtors have two Northeast distribution hubs, located in Bethel Park, Pennsylvania and Huntingdon, Pennsylvania, which support twelve satellite centers in the Northeast region. From these locations, the Debtors distribute automotive parts and supplies to a network of dealers, and repair and service shops. Additionally, the Debtors maintain an on-line presence for retail and distribution focused on B-to-B and B-to-C e-commerce site serving customers nationally. Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the Declaration of Randy Kulamer in Support of First Day Applications and Motions (the "Kulamer Declaration") filed with the Court on September 15, 2014 [Doc. 13] which is incorporated herein by reference.

5.      During the period of time leading up to the Petition Date, the Debtors' financial condition had deteriorated such that they were unable to satisfy all of their financial obligations. Moreover, a lack of liquidity and working capital, which conditions were projected to worsen later in 2014, limited the Debtors' ability to operate their businesses. After evaluating alternatives and

consulting with their advisors and professionals, the Debtors eventually concluded that it was in their best interest, and the interests of their creditors and employees, to seek protection under Chapter 11 of the Bankruptcy Code in order to preserve the going concern value of their business.

6. Following the Petition Date, the Debtors retained GGG Partners, LLC ("GGG") to act as their financial advisor. GGG has assisted the Debtors' management in evaluating and pursuing one or more potential sale transactions. The Debtors have determined, with the guidance and advice of its professional advisors, that the best and most efficient exit strategy for their successful emergence from Chapter 11 would include a sale of some or all of their assets to one or more purchasers.

7. Due to a number of factors, including the importance of eliminating continuing uncertainty which might undermine employee morale and harm the Debtors' business, the Debtors believe that any Purchaser of the Debtors' business assets will likely want to close a transaction expeditiously, and in no event later than November 26, 2014. Therefore, because of the importance of being able to obtain Court approval for a sale of some or all of the Debtors' Identified Assets by the middle of November, 2014, the Debtors are filing this Motion prior to completing documentation of an Agreement with one or more Initial Bidders for all of their assets.

Attached hereto as Exhibit "1" is a proposed Agreement between Miller Auto and Fisher Auto Parts, Inc. ("Fisher") dated October 9, 2014 (the "Fisher Agreement") for the sale of certain Identified Assets listed therein (the "Fisher Identified Assets") relating to the Debtors' central Pennsylvania operations. In the event that a definitive asset purchase agreement for the sale of

assets other than the Fisher Identified Assets is finalized with one or more interested parties prior to service of the Procedures Order, the Debtors intend to file such Agreements with the Court and identify the other party to any such Agreement as an Initial Bidder. The Debtors are seeking approval of certain bid protections for any Initial Bidder, including Fisher, as described below. However, regardless of whether an Agreement with any Initial Bidder other than Fisher is finalized prior to service of the Procedures Order, the Debtors still seek authority to sell any or all Identified Assets and assume and assign Assigned Contracts to one or more Purchasers at the Sale Hearing, subject to the Debtors' right to withdraw this Motion, in whole or part, prior to said Sale Hearing.

With respect to any Identified Assets other than the Fisher Identified Assets, if the Debtors are not able to negotiate a definitive Agreement with a proposed Purchaser prior to service of the Procedures Order, the Debtors, in consultation with the Committee and FCC, LLC d/b/a First Capital ("First Capital"), will review any offers received by the Debtors prior to the Bid Deadline (defined in Exhibit "3" attached hereto) and determine which bids provide the highest and best value to the Debtors' estates.

8. By this Motion the Debtors seek the entry of one or more orders following the conclusion of the Sale Hearing authorizing the Debtors to sell Identified Assets, assume and assign Assigned Contracts, and consummate such other related and necessary transactions in connection therewith as are summarized in this Motion and/or described in more detail in any Agreement (including the Fisher Agreement) with an Initial Bidder (or any other Purchaser approved by the Court) with such assets to be transferred and conveyed free and clear of all liens, claims, interests and encumbrances.

**Proposed Sale of Assets and Assumption and
Assignment of Certain Executory Contracts to Purchaser**

9. Any proposed Agreement shall provide for the sale and assignment to a Purchaser of Identified Assets of the Debtors, for a purchase price and on terms and conditions as set forth more fully in the Agreement.[1]

10. The sale of Identified Assets is to be free and clear of any and all liens, claims, interests and encumbrances, with these to attach to the net proceeds generated from the sale of the Identified Assets, to the extent valid, perfected and enforceable.

11. The Debtors anticipate that proposed Agreements shall provide for the Debtors to assume most, if not all, of its Executory Contracts, and assign them to one more Purchasers, as shall be more fully set forth in the Agreements themselves. The Assigned Contracts under the Fisher Agreement are identified more specifically on Exhibits A-1 and A-2 to the Fisher Agreement attached hereto as Exhibit "1". Exhibit "2" hereto contains a list of all Executory Contracts which might be included in an Agreement. Inclusion on said Exhibits should not be deemed an admission that such items are "executory" within the meaning of 11 U.S.C. § 365.

**Establishing Cure Costs**

12. The Debtors, by this Motion, are also requesting that any objections by non-Debtors parties to Assigned Contracts to assumption and assignment be determined at the Sale Hearing. In assuming the Assigned Contracts, the Debtors and/or the Purchaser will cure defaults and/or pay all amounts (collectively, "Cure Costs"), if any, as required by Section 365(b) of the Bankruptcy

---

[1] If there is any discrepancy between the terms contained in this Motion and the terms of any Agreement itself, the terms of the Agreement shall govern.

Code and will provide adequate assurance of future performance by the Purchaser to whom the Assigned Contracts are being assigned. On or before November 3, 2014, the Debtors shall file with the Court a schedule of all amounts that it believes will be necessary to cure defaults under any Assigned Contracts and serve a copy to the counterparties to each of the Assigned Contracts (the "Cure Schedule"). The Debtors request that, unless an objection to the proposed Cure Costs is properly and timely filed and served, the Court enter an order providing that: (i) the Cure Costs shall be fixed at the amounts shown on the Cure Schedule (as such may be amended) and shall constitute the entire amount necessary to cure and/or provide compensation for any defaults under Section 365(b) of the Bankruptcy Code. If an objection to a particular Cure Cost is timely filed and served, the Debtors request that the Court determine the disputed Cure Cost at the hearing on this Motion. The Cure Costs as ultimately determined by the Court shall be paid as soon as practicable following the Closing on the sale of Identified Assets, or on such other date as shall be determined by the Court.

13. It shall be each prospective Purchaser's responsibility for providing evidence necessary for the Court to find that the assignee can provide adequate assurance of future performance of an Assigned Contract within the meaning of Section 365(b)(1)(C) of the Bankruptcy Code. Each prospective Purchaser will assume all obligations that arise after the closing date under each Assigned Contract to be assigned to that Purchaser. The Debtors will be relieved of any post-assignment liability for any breach of an Assigned Contract in accordance with Section 365(k) of the Bankruptcy Code.

14. Pursuant to Section 541 of the Bankruptcy Code, any Assigned Contracts are property of the Debtors' estates which may be sold and assigned consistent with Sections 363 and 365 of the Bankruptcy Code.

15. The sale, assumption and assignment of Identified Assets and Assigned Contracts as proposed herein is reasonable and proper under Sections 363 and 365 of the Bankruptcy Code and is in the best interests of the Debtors, their creditors and the estates. Accordingly, ample cause exists for the proposed sale, assumption and assignment of Identified Assets and Assigned Contracts.

### **Miscellaneous Provisions**

16. The Debtors seek authorization to take such action and to execute and deliver any approved asset purchase agreement and such other documents, agreements and instruments as may be necessary or advisable to effectuate the terms thereof or any other Court approved sale, provided that the Debtors may not agree to any material modification to an approved asset purchase agreement or ancillary documents without order of the Court.

### **Good Faith Purchaser Designation**

17. As part of the relief sought by the Debtors, the Debtors will ask the Court to designate any successful Purchaser as a good faith purchaser, as such term is utilized in Section 363(m) of the Bankruptcy Code. Such designation can be made by a Bankruptcy Court in the context of a sale of assets of a debtor when it has been established that the proposed purchaser is an unrelated third party, not affiliated with or having any insider relationship with the debtor, and

when the proposed transaction is for fair value and is the result of arms length negotiations between the parties.  <u>See</u> <u>In re Abbotts Dairies of Pennsylvania, Inc</u>., 788 F.2d 143 (3d Cir. 1986).

18. With respect to the proposed transactions, the Debtors anticipate that any Purchaser proposed will meet the qualifications for designation as a good faith purchaser in that: (a) they will not be affiliated in any way with the Debtors, and (b) they and their representatives will have negotiated in good faith and at arm's length with the Debtors' management.  It is expected that any Purchaser may make offers of employment to a number of the Debtors' employees, though there is not currently any definitive agreement, written or oral, between any Purchaser and any of the Debtors' employees.  Any discussions of the potential employment of employees of the Debtors by a Purchaser shall not, however, negatively affect the Debtors' negotiations or detract from the fairness of any proposed transaction.  <u>See</u> <u>In re Integrated Resources, Inc</u>., 147 B.R. 650, 659 (S.D.N.Y. 1992) (employment discussions between Debtors' management and prospective buyer did not taint sale process so as to negate the application of the business judgment rule to the propriety of the sale transaction).

### **Higher And Better Offers**

19. The Debtors will either reach an Agreement with an Initial Bidder and identify that Initial Bidder as a stalking horse prior to service of the Procedures Order, or they expect to receive bids for the purchase of some or all Identified Assets by the Bid Deadline.  In any event, prior to the Auction Sale identified below, the Debtors, in consultation with First Capital and the Committee,  will identify the highest and best offer, and such highest and best offer will be subject to overbid at the auction, as described in more detail below.

20. Any entity who wishes to make an offer to acquire the assets of the Debtors is invited to conduct due diligence, at their own expense, prior to the Sale Hearing. All bidders will be given an equal and fair opportunity to gather information which they feel is necessary to formulate a bid for the acquisition of Identified Assets, subject to the execution of a confidentiality agreement in form reasonably satisfactory to the Debtors.

## Best Interests Of The Estate

21. The Debtors believe that the a sale of Identified Assets as requested herein and set forth in detail in any Agreement with a proposed Purchaser will provide a significantly greater realization for Identified Assets than the liquidation value that would be obtained if the assets were not sold expeditiously in the manner requested herein and the Debtors' business was forced to cease operations.

22. Section 363(b) of the Bankruptcy Code provides that a debtor in possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Under the prevailing case law, a sale under Section 363(b) requires that the Court "expressly find from the evidence presented . . . a good business reason" to approve the sale. Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983). Accord Stephens Industries, Inc. v. McClung, 789 F.2d 386, 389-90 (6th Cir. 1986); In re Titusville Country Club, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991).

23. The Debtors believe, and therefore aver, that the present circumstances of this bankruptcy case warrant approval of the sale of Identified Assets under the standard articulated in

Lionel.  Thus, a sale of Identified Assets is appropriate as such transaction shall represent the exercise of sound business judgment on the part of the Debtors.

24. Section 363(f) of the Bankruptcy Code provides, in pertinent part, as follows:

> (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if --
>
> (2)  such entity consents ; or
>
> \*       \*       \*
>
> (5)  such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. Section 363(f)(2), (5).

25. The Debtors believe that approval of the proposed sale of Identified Assets to an Initial Bidder (including Fisher), or any other successful Purchaser, comports with Section 363(f)(2) of the Bankruptcy Code in that all creditors asserting valid interests in and against Identified Assets will consent to the transaction.  To the extent that any creditor asserting a valid interest in and against Identified Assets does not consent to the sale, the Debtors believes that such creditor could be compelled to accept a money satisfaction of such interest in accordance with Section 363(f)(5) of the Bankruptcy Code.

26. In addition, Section 105(a) of the Bankruptcy Code authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  The purpose of Section 105(a) is to insure a Bankruptcy Court's power to take whatever action "is appropriate or necessary in aid of the exercise of its jurisdiction."

2 Collier on Bankruptcy, 105.01, at 105-2 (15th ed. 1993).  Thus, this Court may exercise its equitable powers to grant the relief requested in this Motion.

27. Finally, approval of a sale transaction as contemplated herein will help facilitate the Debtors' ability to file and seek approval of a plan of reorganization and distribute the sale proceeds in accordance with the priorities delineated in the Bankruptcy Code.

### Breakup Fee To Initial Bidder

28. The Debtors anticipate that any Initial Bidder shall have invested substantial time and effort in negotiating the material terms of an Agreement with the Debtors.  Any Initial Bidder shall also have invested time and effort in connection with its investigation of the Debtors and its due diligence review.  It shall have incurred various legal and other professional costs and expenses, and will incur still further substantial additional fees and costs in its continuing due diligence investigations.  Subject to the terms of any Agreement reached with an Initial Bidder, if a closing occurs with respect to a sale of Identified Assets to a party other than the Initial Bidder with respect to such assets, and the Initial Bidder is ready, willing and able to close the transaction and is not in default under the Agreement, the Debtors proposes that the Initial Bidder be paid an agreed-upon "Breakup Fee" in an amount not to exceed (a) on transactions where the total cash purchase price proposed is $5 million or less, up to 4% of the proposed cash purchase price, and (b) on transactions where the total cash purchase price proposed is greater than $5 million, up to 3% of the proposed cash purchase price.  The Breakup Fee would be paid in the event of the closing of a sale of Identified Assets to a party other than the Initial Bidder for such assets, concurrently with said closing.  The Debtors' obligations to pay a Breakup Fee to the Initial Bidder

would be allowed as an administrative expense claim in the Debtors' Chapter 11 cases pursuant to 11 U.S.C. §§ 503(b) and 507(a)(1) as an actual, necessary expense to preserve the value of the bankruptcy estates.

29.     Sellers of assets often employ buyer protections in order to encourage the making of other purchase offers. These protections are "important tools to encourage bidding and to maximize the value of the Debtors' assets." In re Integrated Resources, Inc., 147 B.R. 650, 659 (S.D.N.Y. 1992). The Debtors submit that the proposed Breakup Fee will not hamper or deter competitive bidding for the Identified Assets. Rather, it will encourage bidding by providing prospective purchasers with an incentive to bid for the Identified Assets and will likely serve as a magnet for other bids. Moreover, the Debtors believe that the ability to provide a break-up fee will enhance the likelihood of attracting a stalking horse Initial Bidder, and thereby set a guaranteed floor price for the Identified Assets, and motivate other potential bidders to participate. If the Debtors do not identify an Initial Bidder for some or all of the Identified Assets, the Debtors will not be obligated to pay any party a Breakup Fee. Rather, the Debtors will receive bids by the Bid Deadline described below, determine which offer is the highest and best offer, and proceed with the auction described below.

## Bid Procedures

30.     In order to ensure that asset values are truly maximized, the Debtors request that following the Procedures Hearing the Court enter a Procedures Order in the form of Exhibit "3" attached hereto approving the bid procedures set forth therein. All creditors and parties in interest

should review Exhibit "3" for information regarding the sale procedures being proposed by the Debtors.

31. The Debtors further request that the Court require that any examination by a prospective bidder of the assets and other financial information relative to the transaction be conducted prior to the Sale Hearing at mutually convenient dates and times by contacting the undersigned counsel for the Debtors and/or GGG. Such inspections should be conducted in a manner which is not disruptive to the Debtors' business. The Debtors may request that prospective bidders be required to execute a confidentiality agreement in form reasonably satisfactory to the Debtors prior to conducting any due diligence or obtaining information considered confidential by the Debtors. In addition, any bidder should be required, within twenty-four (24) hours after the Debtors' request, to submit financial statements and other documents relating to its business activities and its ability to perform in the event that its bid is accepted.

32. The Debtors also ask the Court to direct that offers made prior to or at the Sale Hearing may not be withdrawn after they are made and any entity's refusal or failure to comply with its offer after acceptance of same by the Debtors and approval by the Court shall entitle the Debtors to retain the Deposit.

33. Finally, the Debtors reserve the right to reject any proposed higher and better offer which, after consultation with First Capital and the Committee, is deemed inadequate or insufficient or which is contrary to the best interests of the estates. The Debtors intend to submit any disputes which may arise in connection with the bidding process to the Bankruptcy Court for determination on an expedited basis.

34. Simultaneously herewith, the Debtors have served a copy of this Motion, along with exhibits, on the Office of the United States Trustee, counsel for First Capital, counsel for Fisher, and counsel for the Committee.

## Modification of Rule 6006 Procedures

35. The 2007 amendments to the federal Rules of Bankruptcy Procedure added certain additional procedural requirements to Bankruptcy Rule 6006 which apply where the debtor seeks to assume and assign a number of executory contracts and unexpired leases in one motion. Subdivision (e) provides, in pertinent part, that the a debtor may not seek to assign multiple executory contracts or unexpired leases in the same motion unless they "are to be assigned to the same assignee," or "the court otherwise authorizes the motion to be filed." Subdivision (f), in turn, prescribes specific requirements to be followed when such motions are authorized:

*(f) Omnibus Motions*

*A motion to reject or, if permitted under subdivision (e), a motion to assume or assign multiple executory contracts or unexpired leases that are not between the same parties shall:*

*(1) state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;*

*(2) list parties alphabetically and identify the corresponding contract or lease;*

*(3) specify the terms, including the curing of defaults, for each requested assumption or assignment;*

*(4) specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment;*

*(5) be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and*

*(6) be limited to no more than 100 executory contracts or unexpired leases.*

36.  Subdivision (f) of Rule 6006 became effective in December 2007.  Notwithstanding the mandatory language utilized, the Advisory Committee Report regarding the 2007 amendments to Rule 6006 indicates that bankruptcy court retains flexibility to modify the specific requirements of Subdivision (f) to meet the needs of a particular case, so long as effective notice is provided to the non-Debtors parties to the contracts or leases to be assigned.

> *"An omnibus motion to assume, assign, or reject multiple executory contracts and unexpired leases must comply with the procedural requirements set forth in subdivision (f) of the rule, unless the court orders otherwise. These requirements are intended to ensure that the nondebtor parties to the contracts and leases receive effective notice of the motion. . . ."*

37.  In the instant case, the Debtors believe they have complied (or shall comply) substantially with the requirements of Bankruptcy Rule 6006 for the assumption and assignment of multiple contracts and leases, in that (a) the statement required by Bankruptcy Rule 6006(f)(1) is set forth on page 1 above, in bold type and capital letters, immediately following the caption, (b) Exhibits A-1 and A-2 to the Fisher Agreement (attached hereto as Exhibit 1) list non-Debtors parties to the Assigned Contracts under that Agreement and identify the corresponding contract or lease, (c) proposed Cure Costs shall be identified by supplement to this Motion in the Cure Schedule, (d) any successful Purchaser at the Auction Sale will be required to provide at or before the Sale Hearing sufficient information for non-Debtors parties to determine the Purchaser's ability to provide adequate assurance of performance under the Assigned Contracts, (e) this Motion is designated as the "First" such motion, and any further motions seeking authority to assume and assign multiple contracts or leases will be numbered consecutively, and (g) the potential Assigned Contracts do not exceed 100.  Under the circumstances, the procedures proposed under the Debtors' Motion

substantially complies with Bankruptcy Rule 6006 and will provide effective notice to non-Debtors parties to the Assigned Contracts. Therefore, the Debtors ask that the Court approve and authorize at the Procedures Hearing the proposed method of proceeding under the Motion with respect to the Assigned Contracts.

## Notice - Expedited Consideration

38. The Debtors propose to serve notice of the preliminary Procedures Hearing to consider proposed sale procedures on the Office of the United States Trustee, all non-Debtors parties to any Assigned Contracts, counsel for the Committee, counsel for First Capital, and all parties identified on the Master Service List maintained in this case.

39. Federal Rule of Bankruptcy Procedure 6004 provides, in pertinent part, as follows:

> (a) Notice of Proposed Use, Sale, or Lease of Property. Notice of a proposed use, sale, or lease of property, other than cash collateral, not in the ordinary course of business shall be given pursuant to Rule 2002(a)(2), (c)(1), (i), and (k) . . . .

Fed.R.Bankr.P. 6004.

40. Federal Rule of Bankruptcy Procedure 9007 provides, in pertinent part, as follows:

> When notice is to be given under these rules, the court shall designate, if not otherwise specified herein, the time within which, the entities to whom, and the form and manner in which the notice shall be given.

Fed.R.Bankr.P. 9007.

41. The Debtors contend that the forms of notice set forth above and the period for scheduling the hearing on the sale comport with Bankruptcy Rules 6004, 6006 and 9007, constitute

good and sufficient notice of the relief sought herein, and of all hearings and procedures contemplated hereby.

### Waiver of 14-Day Stay on Closing

42. Bankruptcy Rules 6004(h) and 6006(d) respectively provide that an order authorizing the use, sale, or lease of property and an order authorizing the assumption and assignment of executory contracts or unexpired leases will be stayed for fourteen days after entry of such approval orders unless the court orders otherwise. Because of the need to close the transactions contemplated herein as promptly as possible, the Debtors request that the Court order and direct that the order approving this Motion shall <u>not</u> be automatically stayed for fourteen days.

43. No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully requests that the Court grant this Motion and enter one or more orders providing relief as requested hereinabove, and granting such other and further relief as may be just and proper.

This 10th day of October, 2014.

Respectfully submitted,

SCROGGINS & WILLIAMSON, P.C.

1500 Candler Building
127 Peachtree Street, NE           /s/ J. Robert Williamson
Atlanta, GA 30303                  J. ROBERT WILLIAMSON
T: (404) 893-3880                  Georgia Bar No. 765214
F: (404) 893-3886                  ASHLEY REYNOLDS RAY
E: rwilliamson@swlawfirm.com       Georgia Bar No. 601559
   aray@swlawfirm.com
                                   *Counsel for the Debtors*

## **CERTIFICATE OF SERVICE**

This is to certify that on this date I served a true and correct copy of the attached **Motion** by causing same to be deposited in the United States Mail with adequate postage affixed thereon and addressed to the following persons:

Office of the United States Trustee
362 Richard B. Russell Federal Building
75 Spring Street, S. W.
Atlanta, Georgia 30303

Darryl S. Laddin
Arnall Golden Gregory LLP
171 17th Street, NW
Suite 2100
Atlanta, Georgia 30363-1031

Joseph M. Coleman
Kane Russell Coleman & Logan PC
3700 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201

Tom Walker
McGuireWoods LLP
1230 Peachtree Street, NE
Suite 2100
Atlanta, Georgia 30309

This 10th day of October, 2014.

SCROGGINS & WILLIAMSON, P.C.

1500 Candler Building
127 Peachtree Street, NE           /s/ J. Robert Williamson
Atlanta, GA  30303                 J. ROBERT WILLIAMSON
T: (404) 893-3880                  Georgia Bar No. 765214
F: (404) 893-3886                  ASHLEY REYNOLDS RAY
E: rwilliamson@swlawfirm.com       Georgia Bar No. 601559
   aray@swlawfirm.com

*Counsel for the Debtors*