

**IT IS ORDERED as set forth below:**


**Date: October 17, 2014**

_____

**Mary Grace Diehl**
**U.S. Bankruptcy Court Judge**

_____

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | **CHAPTER 11** |
| | ) | |
| **MILLER AUTO PARTS & SUPPLY** | ) | **Jointly Administered Under** |
| **COMPANY, INC., et al.,** | ) | **CASE NO. 14-68113-mgd** |
| | ) | |
| **Debtors.** | ) | |

**ORDER (A) ESTABLISHING BIDDING AND OTHER PROCEDURES IN**
**CONNECTION WITH THE SALE OF ASSETS**
**OF THE DEBTORS, (B) GRANTING PROTECTIONS TO**
**PROPOSED BUYERS AND (C) PROVIDING NOTICE OF HEARING ON MOTION TO**
**(1) APPROVE SALE  OF CERTAIN ASSETS OF THE DEBTORS FREE AND CLEAR**
**OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (2) AUTHORIZE**
**ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND**
**UNEXPIRED**
**LEASES; (3) ESTABLISH CURE AMOUNTS THEREFOR;**
**AND (4) APPROVE OTHER RELATED RELIEF**

On October 10, 2014, Miller Auto Parts & Supply Company, Inc., ("Miller Auto"),

Johnson Industries, Inc. ("Johnson Industries"), Miller Auto Parts & Paint Company, Inc.

("Miller Paint"), and AutoPartsTomorrow.com, LLC ("APT"), debtors and debtors-in-possession

- 1 -

(collectively, the "Debtors"), filed with the Court the following: Debtor's First Motion (A) For Authority To Sell Assets Free And Clear Of Liens, Claims, And Encumbrances Pursuant To 11 U.S.C. Sections 105(A) And 363(B), (F) And (M), And To Assume And Assign Certain Executory Contracts, Leases And Licenses In Connection Therewith Pursuant To 11 U.S.C. Sections 363 And 365, (B) To Establish Procedures With Respect To Such Sale, Including Bidding Procedures, (C) To Consider Approval Of Topping Fee, And (D) To Shorten Notice (the "Sale Motion").  In the Sale Motion, the Debtors seek the following relief:

(a)     Entry of an order shortening notice and scheduling an expedited hearing (the "Procedures Hearing") to consider (i) approval of certain bidder protections for one or more proposed "stalking horse" purchasers (each, an "Initial Bidder") with whom one or more of the Debtors reach agreement,  subject to Court approval, to sell any or all of their assets,  which bidder protections include payment of a proposed break-up fee, and (ii) scheduling an auction sale (the "Auction Sale") for the sale of  any or all of the Debtors' assets, and establishing terms and conditions, including overbid procedures, for other interested bidders to submit higher and better offers, or, if the Debtors do not reach agreement with one or more Initial Bidders, establishing terms and conditions for parties to submit bids to purchase any or all of the Debtors' assets;

(b)   Following the conclusion of the Procedures Hearing, entry of an order (i) approving the proposed bidder protections and bid procedures and scheduling the proposed Auction Sale, (ii)  scheduling a further hearing (the "Sale Hearing") to consider approval of one or more proposed definitive asset purchase agreements (each, an "Agreement") between one or more of the Debtors and any Initial Bidder,  or between one or more of the Debtors and any other bidder

who shall have submitted the highest and best offer for the purchase of some or all of the Debtors' assets (any such successful bidder being referred to herein as a "<u>Purchaser</u>"), as determined following the conclusion of the Auction Sale; and

(c)   Following the conclusion of the Sale Hearing, entry of an order (i) approving an Agreement with one or more proposed Purchasers, (ii) authorizing and approving the sale by the Debtors to any such Purchasers of  any assets of  the Debtors identified in the underlying Agreements ("<u>Identified Assets</u>"), free and clear (with certain exceptions) of all liens, claims, interests and encumbrances, (iii) authorizing the Debtors to assume and assign to the  proposed Purchasers some or all of the Debtors' executory contracts, licenses, leases and other agreements as requested by the Purchasers (collectively, the "<u>Assigned Contracts</u>"),  to be identified prior to the Auction Sale, and (iv)  and fixing any amounts necessary to cure defaults under each of the Assigned Contracts as a condition of assumption and assignment.

Following due and sufficient notice, the Procedures Hearing was held at 11:30  a.m. on October 16, 2014, to consider the Debtors' request in the Sale Motion for entry of an order approving proposed bid procedures and bidder protections, and scheduling the proposed  Sale Hearing and the deadline for filing objections to the Sale Motion and any relief sought therein. Present at the Procedures Hearing were counsel for the Debtors, , FCC, LLC d/b/a First Capital ("<u>First Capital</u>"), Fisher Auto Parts, Inc. ("<u>Fisher</u>"), and Automotive Distributors Co., Inc. ("<u>ADC</u>").   Appearing telephonically were counsel for the Official Committee of Unsecured Creditors (the "<u>Committee</u>") and Ford Motor Company.  On October 14, 2014, the Committee filed a Limited Objection to the Sale Motion (the "<u>Committee Objection</u>") challenging certain of the sale procedures proposed by the Debtors.  No other objections to the Sale Motion were filed

or asserted at the Procedures Hearing.  The Committee Objection is resolved in accordance with this Order.

At the Procedures Hearing, counsel for the Debtors proffered without objection testimony by Katie Goodman, one of the Debtors' financial advisors, regarding the existence of circumstances in these jointly administered cases justifying consideration of the proposed sale of the Debtors' assets on an expedited basis in accordance with sale procedures requested by the Debtors, as modified by this Order.  Additionally counsel for the Committee, Fisher and the Debtors announced that they had reached agreement to revise the proposed Break-Up Fee under the Fisher APA to $132,500, and to make certain revisions to the proposed sale procedures, all of which revisions are incorporated in this Order.

The Court having considered the Sale Motion, any objections thereto filed or asserted at or before the Procedures Hearing, statements of counsel at the Procedures Hearing, the record, and for cause shown, the Court finds that it is in the best interest of each Debtor's estate and creditors to approve the proposed bid procedures and bidder protections, including payment of a Break-Up Fee to one or more Initial Bidders, if any, and to schedule a Sale Hearing (and objection deadline) to consider any proposed sale of Identified Assets and assumption of assignment of Assigned Contracts, on terms and conditions as requested in the Sale Motion, as modified by the terms set forth in this Order.   The Court further finds that cause exists to allow the Debtors to pursue a sale of their assets and assumption and assignment of their executory leases, contracts, licenses and  other agreements,  pursuant to the procedures requested in the Sale Motion, as such are modified by the terms of this Order, and that such procedures as authorized by this Order, and the Sale Motion, comply with applicable  Bankruptcy Rules,

including Bankruptcy Rules 2002, 6004, 6006, 9006 and 9007. Accordingly, it is hereby

ORDERED, that the following procedures be, and hereby are, approved for the sale of the Debtors' assets, and, in connection therewith,  the assumption and assignment of  any proposed Assigned Contracts, to one or more Purchasers:

(a)      <u>Initial Bidders/Submission of Competing Bids</u>.  Prior to entry of this Order  the Debtors have filed with the Court, either as an exhibit attached to the Sale Motion, or as a supplemental exhibit to the Sale Motion,  copies of separate Agreements proposing to sell certain Identified Assets to the following Initial Bidders: (i) Asset Purchase Agreement (the "<u>Fisher Agreement</u>") dated as of October 9, 2014, with Fisher; (ii) Asset Purchase Agreement (the "<u>ADC Agreement</u>") dated as of October 15, 2014, with ADC; and (iii) Asset Purchase Agreement (the "<u>TPH Agreement</u>") dated as of October 16, 2014, with TPH Acquisition LLLP ("<u>TPH</u>"). Persons or entities other than the foregoing Initial Bidders wishing to make a bid for any Identified Assets or Assigned Contracts of the Debtors  (a "<u>Proposed Bid</u>") shall submit bids in the form of a written Agreement (a "<u>Proposed Agreement</u>") to the Debtors on or before **5:00 p.m. prevailing eastern time on November 10, 2014** (the "<u>Bid Deadline</u>"), together with an earnest money deposit (the "<u>Deposit</u>") in an amount of no less than five (5%) percent of the proposed purchase price, and any prospective Purchaser must also provide proof of their financial ability to close on the transactions described in the Proposed Agreement, including proof of their financial ability to perform under any Assigned Contracts which they desire to have assigned to

them under Section 365 of the Bankruptcy Code.  Any Proposed  Bid, including, without limitation, the Deposit and an original counterpart of the executed Proposed Agreement, should be sent by e-mail to the following:  (i) GGG Partners, LLC, Attention:  Katie Goodman, at kgoodman@gggmgt.com; and (iii) Scroggins & Williamson, P.C., Attention: J. Robert Williamson, at rwilliamson@swlawfirm.com.  A hard copy of the Proposed Agreement should also be delivered to counsel for the Debtors at c/o J. Robert Williamson, Esq., Scroggins & Williamson, P.C., 127 Peachtree Street, NE, Atlanta, Georgia 30303.  Counsel for the Debtor shall promptly provide copies to counsel for FCC and counsel for the Committee;

(b)      Required Terms of Competing Bids.  Any Proposed Bid must also conform to the following requirements: (1) **provide for a closing date on the sale which is no later than November 21, 2014** (or such later date as may be agreed to by the Debtors, First Capital and the Committee, ); (2) identify any proposed Assigned Contracts (subject to any right provided under the Proposed Agreement to exclude any of the proposed Assigned Contracts at or before closing); (3)    not contain any due diligence conditions or a financing contingency; (4) if the Debtors have reached an Agreement with  an Initial Bidder  for the sale of Identified Assets substantially similar to those which are the subject of the Proposed Bid, then the Proposed Bid must contain substantially the same (or more favorable) terms and conditions as those contained in the Initial Bidder's Agreement and a purchase price and other

- 6 -

consideration which has a value which is (i) with respect to any Proposed Agreement to purchase Identified Assets substantially similar to the Fisher Agreement, $207,500 greater than the purchase price and other consideration proposed in the Fisher Agreement, (ii) with respect to any Proposed Agreement to purchase Identified Assets substantially similar to the ADC Agreement, $200,000 greater than the purchase price and other consideration proposed in the ADC Agreement, and (iii) with respect to any Proposed Agreement to purchase Identified Assets substantially similar to the TPH Agreement, $50,000 greater than the purchase price and other consideration proposed in the TPH Agreement; and (5) if there is no Initial Bidder for the substantially similar Identified Assets, an amount deemed acceptable by the Debtors, following consultation with the Committee and FCC;

(c)      Identification of Eligible Bidders.  **On or before the close of business on Tuesday, November 11, 2014, the Debtors shall review the Proposed Bids (in consultation with the Committee and FCC)**, and the Debtors shall notify the competing bidders if their Proposed Bids satisfy the criteria required to participate in an auction sale regarding the Debtors' assets (each such bidder and each Initial Bidder being referred to herein as an "Eligible Bidder"). Notwithstanding any of the requirements set forth in paragraph (b) above or anything herein to the contrary, First Capital shall be deemed an Eligible Bidder for submitting a credit bid under Section 363(k) of the Bankruptcy Code for any or all of its collateral.  Following consultation with the Committee and FCC, the

- 7 -

Debtors shall be entitled to extend the deadline for a prospective competitive bidder to comply with the eligibility requirements if it determines that such party is working in good faith to comply and appears to have the ability to do so.   Once Eligible Bidders have been identified, upon request financial information regarding such parties will be made available promptly  to the non-Debtor parties to proposed Assigned Contracts;

(d)      Auction Sale Date.  All Eligible Bidders must **attend an auction sale to be conducted by or at the direction of counsel for the Debtors beginning at 10:00 a.m. ET on November 13, 2014** (the "Auction Sale"), at  the offices of Scroggins & Williamson, P.C., or such other location as the Debtors shall designate in writing to all Eligible Bidders on or before the close of business on November 11, 2014;

(e)      Auction Procedures.   At the Auction Sale, (i) except as otherwise provided in an Initial Bidder's Agreement, bidding for Identified Assets will be conducted in minimum incremental bids of $50,000 (or such smaller increment as the Debtors deems appropriate under the circumstances following consultation with the Committee and FCC), and (ii) in the event there are bids on different Identified Assets which overlap, the Debtors, in consultation with the Committee and FCC, shall be entitled to conduct the bidding by lot and/or gross, and, following consultation with the Committee and FCC, shall have complete discretion to structure the auction and the bidding in such  manner as they deem necessary to maximize value for creditor constituencies;

(f)    Determination of Prevailing Bids.  Following the conclusion of bidding and prior to the Sale Hearing, the Debtors, in consultation with the Committee and FCC, shall determine which bid or combination of bids generate the greatest amount for the Debtors' estates (each, a "Prevailing Bid"), and identify one or more prospective Purchasers (each, a "Prevailing Purchaser")  and Agreements to recommend for approval by the Court at the Sale Hearing as constituting the highest and best offers;

(g)    Approval at Sale Hearing.  At the Sale Hearing, the Debtors may seek Court approval for the sale of Identified Assets and assumption and assignment of Assigned Contracts to one or more Prevailing  Purchasers on terms and conditions as set forth in any Agreement reached with such Prevailing Purchasers, and, following consultation with the Committee and FCC, the Debtors may  also seek approval of one or more back-up bids.

IT IS FURTHER ORDERED, that, with respect to the Initial Bidders identified in the Agreements previously filed with the Court, each shall be entitled to be paid a "Break-Up Fee" in the following amounts on terms and conditions as set forth herein: (a) Fisher shall be entitled to a Break-Up Fee of $132,500; (b)  ADC shall be entitled to a Break-Up Fee of $130,000; and (c)  TPH shall be entitled to a Break-Up Fee of $24,000.  An Initial Bidder will be entitled to receive the agreed-upon Break-Up Fee upon occurrence of  the following condition:  if the Debtors elect not to proceed with a sale to the Initial Bidder and instead proceed to close a sale of substantially the same Identified  Assets to one or more  parties other than the Initial Bidder, and the Initial Bidder is ready, willing and able to close the transaction and is not otherwise in

- 9 -

default under the Agreement. Any Break-Up Fee owed to an Initial Bidder would be paid within five business days following the closing of a sale to a higher bidder and shall constitute the Initial Bidder's sole remedy with respect thereto. The Debtors' obligations to pay a Break-Up Fee to any Initial Bidder would be allowed as an administrative expense claim in the Debtors' Chapter 11 Cases pursuant to 11 U.S.C. §§ 503(b) and 507(a)(1) as an actual, necessary expense to preserve the value of the bankruptcy estate.

IT IS FURTHER ORDERED that nothing in this Order shall abrogate or alter the right any secured creditors may have to credit bid as existing under Section 363(k) of the Bankruptcy Code without payment of any Break-Up Fee, so long as, with respect to any secured creditor other than First Capital, a Proposed Bid containing such credit bid is submitted on or before the Bid Deadline, subject to any right of the Debtors, the Committee, or other interested parties to request the Court for cause to limit such right in accordance with such Section, including, without limitation, requiring the payment of any Break-Up Fee which may be payable to an Initial Bidder as a condition of any credit bid being considered as a Prevailing Bid.

IT IS FURTHER ORDERED that, nothing in this Order shall be deemed to modify the terms and conditions of the Final DIP Order [Doc. No. 84] or alter First Capital's or the Committee's right thereunder. Furthermore, nothing in this Order shall in any way limit, condition, abrogate or alter the unqualified right of First Capital to credit bid for any or all of its collateral under Section 363(k) of the Bankruptcy Code without payment of any Break-Up Fee, as expressly provided in paragraph 13 of the Final DIP Order [Doc. No. 84]; provided, however, that in such event the affected Initial Bidder will still be entitled to a Break-Up Fee from the Debtors' estates.

PLEASE TAKE NOTICE that the description of the Sale Motion set forth above is intended solely to provide interested parties with an overview of the material terms thereof, and all parties are referred to the Sale Motion itself for complete details.  A copy of the Sale Motion, including the Agreements of the Initial Bidders which are exhibits thereto, is available upon written request to the undersigned counsel to the Debtor, or alternatively, it may be reviewed during normal business hours at the offices of the Clerk of this Court.  In addition, the Sale Motion is available online at the Court's website, which address is www.ganb.uscourts.gov, and at the website maintained for the Debtor in this case by its Claims Agent, Logan and Company, which address is www.loganandco.com.  Before any potential Purchaser is granted access to any non-public, confidential, proprietary, or otherwise sensitive information about the  Debtors, their assets, or their finances, such potential purchaser must execute and deliver to the Debtors a Non-Disclosure Agreement in form reasonably satisfactory to the Debtors and its financial advisors.

IT IS ORDERED AND FURTHER NOTICE IS GIVEN that any creditor or other party in interest who has any objection to the Sale Motion **must file a written objection with the Clerk of the Court on or before November 10, 2014** (the "Objection Deadline").  Such creditor or other party in interest also must serve a copy of such objection upon the following parties so that the objection is actually received by such parties no later than said date:  J. Robert Williamson, Esq., Scroggins & Williamson, P.C., Counsel for the Debtors, 1500 Candler Building, 127 Peachtree Street, N.E., Atlanta, Georgia 30303 (rwilliamson@swlawfirm.com); Darryl S. Laddin, Esq., Counsel for FCC, Arnall Golden Gregory LLP, 171 17th Street, N.W., Suite 2100, Atlanta, GA 30363-1031 (darryl.laddin@agg.com); and Joseph F. Coleman, Esq., Counsel for the Committee, Kane Russell Coleman & Logan, PC, 3700 Thanksgiving Tower,

1601 Elm Street, Dallas, Texas   75201 (jcoleman@krcl.com).   Each such objection must set forth the name of the objecting party, the nature of the interest held or asserted against the Debtors' estates and any Identified Assets or Assigned Contracts, and the specific basis and grounds for the objection.   Any objection that is not timely filed and served in the manner set forth herein will be deemed waived and forever barred.

PLEASE TAKE FURTHER NOTICE that **on or before November 3, 2014**, the Debtors shall file with the Court  a schedule of all amounts that they believe will be necessary to cure defaults under any of their executory leases, contracts, licenses or other agreements (collectively, the "Executory Contracts"), in order to assume and assign such items pursuant to 11 U.S.C. § 365 (the "Cure Amounts").   The Debtors shall be permitted to amend the schedule of  Cure Amounts until the Sale Hearing.  The Debtors request authority under the Sale Motion to assume and assign all of their Executory Contracts to one or more Purchasers, including, without limitation, those Executory Contracts identified on Exhibit A attached hereto.  Inclusion on said Exhibits shall not be deemed an admission that such items are "executory" within the meaning of 11 U.S.C. § 365, and the Debtors have represented that any proposed cure amounts shown on said Exhibits are estimates; therefore, said amounts are not intended to be binding and are subject to revision as set forth herein. The Debtors shall have the right to exclude any or all of its Executory Contracts from any approved sale prior to the closing of the sale following approval at the Sale Hearing.

IT IS ORDERED AND NOTICE IS FURTHER GIVEN that any other party to an Executory Contract  to be assumed and assigned to any Purchaser that objects to the assumption and assignment, disagrees with the Debtors' Cure Amounts listed in the schedule to be filed with

- 12 -

the Court on or before  November 3, 2014 (or any amendment thereto), or asserts any other cure amounts, defaults or claims against any of the Debtors in connection with the proposed assumption and assignment of such Executory Contract must file and serve a written objection or assertion of the claim or default in the manner detailed above on or before the Objection Deadline.  Each such objection shall also set forth (1) the specific grounds for the objection; (2) any and all defaults of the Debtors (whether monetary or non-monetary) that the objecting party alleges exist under such Executory Contract and, (a) if such alleged defaults are monetary, the nature of such monetary defaults (including the date and amount of any payment allegedly due under such lease or contract) and cure amounts, if any, due and owing by the Debtors pursuant to 11 U.S.C. § 365(b); (b) if such alleged defaults are non-monetary, the nature of such non-monetary defaults and the type of action required to cure such non-monetary defaults; and (c) any and all claims of any nature whatsoever against the Debtors that arise under or relate to such Executory Contract.  Any party to an Executory Contract who fails to  file a timely written objection to the proposed assumption and assignment as set forth above shall be deemed to have waived any such objection and to have consented to the assumption and assignment of such Executory  Contract to any proposed Purchaser.   Any party to an Executory Contract not specifying any default or claim as required herein shall be deemed to have acknowledged that no default or claim exists under any such Executory Contract, except the Cure Amounts set forth in the schedule filed by the Debtors (and any amendment thereto).  In the event that objections are not timely filed, served, and advocated in the manner set forth herein, parties will be bound by the Cure Amounts set forth therein.

IT IS FURTHER ORDERED AND NOTICE IS FURTHER GIVEN that if an objection

to the Cure Amount is timely and properly filed and served, the Court will determine the proper cure amount at the Sale Hearing.

IT IS FURTHER ORDERED AND NOTICE IS FURTHER GIVEN that the Court will conduct the Sale Hearing to consider the Sale Motion, and any objections thereto, on the 14th day of November, 2014, at 1:30, p.m. E.T. in Courtroom 1201, 75 Spring Street, S.W., Atlanta, Georgia. Any party in interest who has properly and timely filed and served an objection as described herein must appear at the Sale Hearing and present such objection. Failure to present such objection at the Sale Hearing shall be deemed a waiver and bar the party from asserting any and all objections. No further notice of such Sale Hearing shall be given. The Sale Hearing may be continued to another date or location by announcement made at such hearing.

IT IS HEREBY FURTHER ORDERED that counsel for the Debtors shall promptly serve this Order upon those parties identified on the Master Service List; all parties to Executory Contracts; and any parties with valid liens, claims, encumbrances, or other interests against any assets of the Debtors. Such notice constitutes appropriate and adequate notice respecting the Sale Motion and the Sale Hearing. Counsel for the Debtors shall promptly file a certificate of service evidencing compliance with the service obligations contained in this paragraph.

**[END OF DOCUMENT]**

Prepared and presented by:

 /s/ J. Robert Williamson
J. Robert Williamson
Georgia State Bar No. 765214
SCROGGINS & WILLIAMSON
127 Peachtree Street, N.E., Suite 1500
Atlanta, Georgia  30303
(404) 893-3880
e-mail: rwilliamson@swlawfirm.com
Counsel for the Debtors

- 14 -